

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-4-2006

# USA v. Kossak

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2424

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Kossak" (2006). *2006 Decisions.* Paper 1156.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1156

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-2424
_____

UNITED STATES OF AMERICA

v.

ROBERT KOSSAK,

Appellant

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Criminal No.02-cr-00064-1)
District Judge:  Honorable Gregory M. Sleet

_____

Argued on March 7, 2006

Before: RENDELL and AMBRO , <u>Circuit Judges,</u>
and SHAPIRO*, <u>District Judge</u>.

(Filed:  May 4, 2006)

_____

   *  Honorable Norma L. Shapiro, Judge of the United States District Court for the
Eastern District of Pennsylvania, sitting by designation.

Mark S. Greenberg [ARGUED]
LaCheen, Dixon, Wittles & Greenberg
1429 Walnut Street, 13th Floor
Philadelphia, PA  19102

*Counsel for Appellant*
*Robert Kossak*

Richard G. Andrews [ARGUED]
Office of the United States Attorney
1007 Orange Street, Suite 700
Wilmington, DE   19899

*Counsel for Appellee*
*United States of America*

—————

OPINION OF THE COURT
—————

RENDELL, Circuit Judge.

Appellant Robert Kossak was convicted at trial of conspiracy, interstate transportation of stolen property, and bank fraud.  Before trial, Kossak filed a motion to suppress, which was denied.  The District Court sentenced Kossak to 60 months imprisonment.  During the sentencing hearing, before imposing sentence, the District Court calculated Kossak's sentencing guideline range to be 57-71 months.  The guideline range was calculated after resolving, among other things, two disputed sentencing issues–whether Kossak should have received a two-level upward adjustment for "mass marketing" and a two-level upward adjustment for "vulnerable victims."

2

On appeal, Kossak argues that the District Court's denial of his motion to suppress certain financial documents was reversible error. He also argues that the District Court abused its discretion in sentencing him by incorrectly calculating his sentencing guideline range. He argues that the upward adjustments for "mass marketing" and "vulnerable victims" should not have been applied. He requests that we reverse his conviction and remand the matter to the District Court for a new trial with instructions to suppress the financial documents, or, should we find that reversal is not merited, that we remand for re-sentencing.[1]

## I. Motion to Suppress

Kossak's argument that the District Court erred in failing to grant his motion to suppress focuses on his claim that the government engaged in "outrageous government conduct." Kossak's basis for this argument is that, during the FBI's investigation, he was represented by a Delaware attorney, Joseph Kulesza, whom the FBI may also have had reason to suspect of wrongdoing in connection with the same fraudulent scheme. On the advice of his attorney, Kulesza, Kossak cooperated with the investigation, turning over various corporate financial records. Kossak now argues that these records should have been suppressed, because the government did not inform him that his attorney may also have been suspected of wrongdoing and had a potential conflict of interest. This was,

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over the appeal pursuant to 28 U.S.C. §§ 1291 and 3742.

3

Kossak argues, "outrageous government conduct" that rose to the level of violating Kossak's Fifth Amendment right to due process. We disagree.[2]

In 1952, the Supreme Court recognized that outrageous misconduct by law enforcement officers in detecting and obtaining incriminating evidence could rise to the level of a due process violation. *Rochin v. California*, 342 U.S. 165 (1952) (vacating conviction and dismissing indictment where police had pumped stomach of suspected drug pusher to obtain incriminating evidence). In *Rochin*, the Court said that "the proceedings by which this conviction was obtained do more than offend some fastidious squeamishness or sentimentalism about combating crime too energetically. This is conduct that shocks the conscience." *Id.* at 172. In *United States v. Russell*, 411 U.S. 423, 431-32 (1973), the Court referred to the type of conduct which violated the Due Process Clause as conduct that violates "fundamental fairness" and is "shocking to the universal sense of justice."

In *United States v. Voigt*, Judge Cowen noted that "the judiciary is extremely hesitant to find law enforcement conduct so offensive that it violates the Due Process Clause." 89 F.3d 1050, 1065 (3d Cir. 1996). In *United States v. Jannotti*, 673 F.2d 578, 608 (3d Cir. 1982) (en banc), we observed that "the majority of the Court has manifestly reserved for the constitutional defense only the most intolerable government conduct."

---

[2]Our review of the denial of a motion to suppress is mixed. We have plenary review of the District Court's legal conclusions and defer to its factual findings unless they are clearly erroneous. *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002); *United States v. Voigt*, 89 F.3d 1050, 1064 (3d Cir. 1996).

4

We cautioned that "[w]e must necessarily exercise scrupulous restraint before we denounce law enforcement conduct as constitutionally unacceptable.... Unless the behavior of the F.B.I. agents rose to the level of outrageousness which would bar conviction, the conduct of agents of the executive branch who must protect the public from crime is more appropriately considered through the political process where divergent views can be expressed in the ballot box." *Id.* at 607, 609.

In order to raise a colorable claim of outrageousness pertaining to alleged governmental intrusion into the attorney-client relationship, Kossak must demonstrate each of the three following elements: (1) the Government's objective awareness of an ongoing personal attorney-client relationship between its informant and the defendant; (2) deliberate intrusion into that relationship; and (3) actual and substantial prejudice. *See Voigt*, 89 F.3d at 1067. Here, the record indicates that the Government was aware of an ongoing attorney-client relationship between Kulesza and Kossak. At issue is whether the Government deliberately intruded into that relationship and whether Kossak suffered actual and substantial prejudice.

The Government's conduct with respect to the Kulesza-Kossak attorney-client relationship falls far short of the sort of purposeful intrusion into the attorney-client relationship that would rise to the level of outrageousness. The record contains no indication that the Government extorted information from Kulesza, promised him a deal in exchange for testimony against his client, or, in any way, obtained information that

5

was covered by the attorney-client privilege. We are aware of no authority, and Kossak has cited none, imposing an affirmative duty on the Government to inform a suspect that he has a potential conflict of interest with his attorney.[3] In addition, while the Government may well have been aware of a potential conflict of interest, there is no evidence that (1) an actual conflict existed or (2) the Government had knowledge of any such actual conflict. The Government did not subpoena Kulesza or introduce at trial any statements made by him in violation of the attorney-client privilege.

Additionally, Kossak was not prejudiced by the Government's conduct. Kossak argues that he was prejudiced because his attorney advised him to cooperate with the Government's investigation contrary to his interests. He argues: "Had Mr. Kulesza not been under investigation he would have counseled [Kossak] to invoke his Fifth Amendment right against self-incrimination and not disclose documentary evidence, like the CMB and KRA spreadsheets that were not subject to grand jury subpoena." Appellant's Br. at 22. This argument, however, is flawed. Kossak has made no showing that the financial documents he turned over would have been protected under the Fifth Amendment right against self-incrimination. The corporate financial records at issue were not subject to this protection. *See Rogers Transp., Inc. v. Stern*, 763 F.2d 165, 166

---

[3]The case primarily relied on by Kossak, *Voigt*, involved far more egregious conduct than what is presented here. The *Voigt* court addressed a situation where the attorney was also acting as a government informant, secretly supplying information about his client to the Government. 89 F.3d at 1059-63. Here, there is no evidence that Kulesza was providing secret information to the Government.

6

(3d Cir. 1985). While the act of producing a document might be protected under the Fifth Amendment if the act is both "testimonial" and "incriminating," *id.* at 168, Kossak makes no attempt in his brief to explain why he believes that his act of turning over the documents was "testimonial" in this case. While he argues that the *contents* of the documents aided the Government in connecting him to the scheme, he does not argue that his act of turning them over had testimonial effect. Further, CMB and KRA are both corporations. As a corporate custodian, Kossak would not have been entitled to resist a subpoena on the ground that his act of production would have been personally incriminating. *Braswell v. United States*, 487 U.S. 99, 117 (1988).

Therefore, for these reasons, we find that the Government's conduct was not "outrageous" and did not violate the Fifth Amendment's Due Process Clause.

## II.  Sentencing

Kossak argues that the sentence imposed by the District Court was unreasonable because the guideline range was incorrectly calculated to include a two-level enhancement for "mass-marketing" under U.S.S.G. § 2F1.1(b)(3)[4] and a two-level enhancement for preying on "vulnerable victims" under U.S.S.G. § 3A1.1(b).[5]

---

[4]Former U.S.S.G. § 2F1.1(b)(3) has since been repealed and replaced by U.S.S.G. § 2B1.1(b)(2)(A)(ii).

[5]We exercise plenary review over the meaning and construction of the sentencing guidelines, but review underlying factual determinations for clear error. *United States v. Butch*, 256 F.3d 171, 177 (3d Cir. 2001). The District Court's sentence is also reviewed for reasonableness. *United States v. Booker*, 125 S.Ct. 738, 765-66 (2005).

## A. "Mass-Marketing"

As used in the sentencing guidelines, mass-marketing "means a plan, program, promotion or campaign that is conducted through solicitation by telephone, mail, the Internet, or other means to induce a large number of persons to (A) purchase goods or services; (B) participate in a contest or sweepstakes; or (C) invest for financial profit. The enhancement would apply, for example, if the defendant conducted or participated in a telemarketing campaign that solicited a large number of individuals to purchase fraudulent life insurance policies." U.S.S.G. § 2F1.1, cmt. 3.

Kossak argues that the mass-marketing enhancement was improper because the borrowers who were defrauded were, for the most part, referred by friends, family members, and attorneys. While Kossak admits that "there was testimony that [Kossak's] related companies solicited individuals by use of a lead machine, telemarketing and advertising," he argues that the evidence indicates that only 13 of the borrowers implicated in the scheme had been solicited through telemarketing. Appellant's Br. at 28-9. This, he argues, is not "a large number." *Id.*

We find that the District Court did not err in viewing Kossak's scheme as mass-marketing. As the District Court observed, this was a situation in which telemarketing was a significant part of the scheme. The District Court found that Kossak had employed 12 or 13 telemarketers to solicit loans as part of his business practice. Further, 13 of 49 victims came into contact with Infinity through mass-marketing. The fact that the other

8

36 victims were solicited by other means does not make the enhancement inapplicable. The comments accompanying § 2F1.1 indicate that the enhancement applies where a large number of people are "solicited," not only where a large number of people are, in fact, induced and defrauded. In other words, the enhancement targets conduct and not result. Therefore, because Kossak's scheme made use of telemarketing, the mass-marketing enhancement was properly applied.

### B. "Vulnerable Victims"

Kossak objected to a two-level enhancement for targeting vulnerable victims. We conduct a three-step analysis in reviewing the application of a vulnerable victim analysis.

> The enhancement may be applied where: (1) the victim was particularly susceptible or vulnerable to the criminal conduct; (2) the defendant knew or should have known of this susceptibility or vulnerability; and (3) this vulnerability or susceptibility facilitated the defendant's crime in some manner; that is, there was a nexus between the victim's vulnerability and the crime's ultimate success.

*United States v. Iannone*, 184 F.3d 214, 220 (3d Cir. 1999) (quotations and citations omitted).

The District Court underwent this analysis, observing that Kossak's victims included (1) a 62-year-old man in an oxygen tent, (2) a 90-year-old man, (3) an 80-year-old woman, (4) a 59-year-old blind woman, (5) a 59-year-old woman who was entirely unaware of the loan, (6) a man who was 64 at the time of a first loan and 65 at the time of a second, (7) a 68-year-old man, (8) a 73-year-old woman, (9) an 81-year-old man living in a nursing home, (10) a bankrupt man, who had lost his savings and whose wife had

just lost her job at the time of the transaction, and (11) a man who did not speak English. App. at 434.

The District Court found that "the record clearly establishes that these victims' ages, disabilities and vulnerabilities were apparent, thereby satisfying the Court that the defendant knew or should have known of their vulnerability." *Id.* The District Court also found the existence of the requisite nexus between the victims' vulnerabilities and the success of the defendant's crime. *Id.* at 434-35. Kossak stole significantly more from his elderly and disabled victims than he did from his younger and non-disabled victims. The District Court found that the average return from the total amount of fraudulent loans in the indictment was 14.83 percent, while the return on the loans to the disabled, elderly, and non-English speaking victims was 44.1 percent. "In this regard," the District Court stated, "it is clear that the defendant exploited the vulnerable victims to a greater degree of success in accomplishing his crime." *Id.* at 435. We find no error in the District Court's analysis.

### III. Conclusion

For the reasons set forth above, we will AFFIRM the Judgment and Commitment Order of the District Court.