NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 20-2686

———————

UNITED STATES OF AMERICA

v.

DAVID M. DUNHAM, JR.,

Appellant

———————————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action No. 5-15-cr-00602-001)
District Judge: Honorable Jeffrey L. Schmehl

———————————

Argued on June 3, 2021

Before: AMBRO, HARDIMAN, and PHIPPS, Circuit Judges

(Opinion filed: July 20, 2021)

Shon Hopwood **[Argued]**
Kyle Singhal
Ann M. Hopwood
Hopwood & Singhal
1701 Pennsylvania Avenue, N.W.,
Suite 200
Washington, DC 20006
          *Counsel for Appellant*

Jennifer Arbittier Williams
Robert A. Zauzmer
Mary E. Crawley
Office of United States Attorney
615 Chestnut Street

Suite 1250
Philadelphia, PA 19106

Jennifer S. Neumann
John Smeltzer
Jean E. Williams
Adam C. Cullman
Thekla Hansen-Young [**Argued**]
United States Department of Justice
Environment & Natural Resources Division
P.O. Box 7415
Washington, DC 20044
                    *Counsel for Appellee*

---

OPINION[*]

---

AMBRO, <u>Circuit Judge</u>

A jury found David Dunham Jr. guilty on various counts of fraud, false tax filings, and obstruction. The convictions were in connection with using his alternative fuels businesses to obtain improper subsidies, grants and tax credits. Dunham appeals, arguing that the District Court should have dismissed his indictment because the Government engaged in outrageous misconduct by inviting him to attend three proffer meetings despite being aware of a potential conflict of interest affecting his then-attorney. In the alternative, he argues the Court should have held an evidentiary hearing to explore this issue. As the outrageous government misconduct defense is reserved for only the most

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

egregious circumstances, and Dunham's allegations, even if true, do not meet that high bar, we reject his arguments and affirm his convictions.

I.

For over two decades, Dunham made his living in the alternative fuels industry. He first founded Smarter Fuel, Inc. on his own, and then in 2010 launched Greenworks Holdings, LLC with codefendant Ralph Tommaso. The businesses were billed as green energy enterprises. Among other things, they collected, processed, and resold used oil from restaurants. Through his businesses, Dunham took advantage of various federal programs run by the Environmental Protection Agency, Internal Revenue Service, and U.S. Department of Agriculture—in the form of subsidies, grants and tax credits— intended to incentivize the production of alternative fuels. The intricacies of these programs are complex, but (as Dunham acknowledges) they "are not in dispute" in this appeal. Dunham's Br. at 7.

Since its inception, Greenworks paid Michael McAdams, a Washington lobbyist, for consulting services regarding tax credits and other regulatory issues. App. A8, Dist. Ct. Op. at 2. McAdams had a law degree but never practiced as an attorney, though in 2011 he joined the law firm Holland & Knight ("H&K") as a "Senior Policy Advisor." App. A195. Dunham hired H&K to provide "legal services in connection with fuel regulatory support" to Greenworks, with McAdams "lead[ing]" the team. App. A192– 93; Dist. Ct. Op. at 2.

In July 2012, the Government, as part of an investigation, executed search warrants of Dunham's businesses and home. Based on McAdams' recommendation,

3

Dunham hired John Brownlee, a white-collar criminal defense partner at H&K. Dist. Ct. Op. at 2. Although McAdams and Brownlee were in the same law firm, and thus Brownlee may have been inclined to shield McAdams and the firm from liability, Brownlee never obtained a conflict waiver from Dunham. He asserts Brownlee encouraged him to negotiate a plea deal. Based on that advice, Dunham agreed to attend proffer meetings with the Government. Before those meetings, he signed a letter including the standard acknowledgment that, if he ever testified at trial, "the [G]overnment may cross-examine [him], introduce rebuttal evidence and make representations based on [proffered] statements," which "helps to assure [Dunham] does not abuse the opportunity for an 'off-the-record' proffer . . . [and] make materially false statements." App. A205.

Dunham attended three proffer meetings on July 9, 2013, December 5, 2013, and January 2, 2014. He now argues that the Government believed he revealed damning information at these meetings he would not have revealed with conflict-free counsel. For example, Dunham allegedly admitted he "was not adding diesel to his product as was required under the terms of the USDA program." Dunham's Br. at 17–18 (citing App. A210).

Following the third meeting, the Government asked him to acknowledge in writing that there may be a conflict of interest due to Brownlee and McAdams' membership in the same law firm. Dunham refused and hired new counsel.

In December 2015, the Government charged Dunham with various counts of conspiracy, false statements, wire fraud, false tax filings and obstruction, some of which

4

were later dismissed on the Government's motion.  At a high level, the indictment alleged that Dunham and Tommaso defrauded the federal government of tax credits and grant monies.  Dist. Ct. Op. at 1–2.  Prior to trial, Dunham's new counsel moved to dismiss the indictment, arguing that the Government improperly exploited Brownlee's alleged conflict of interest.  The District Court denied the motion without an evidentiary hearing. It further granted the Government's motion in limine, thus allowing the Government to introduce statements made by Dunham during the proffer sessions to rebut any contradictory statements made by him at trial.  App. A22.

Following a sixteen-day jury trial, the jury convicted Dunham on all but one count.  The District Court sentenced him to eighty-four months of imprisonment.  Suppl. App. 606–14.  He appeals his convictions to us.[1]

II.

When reviewing a district court's decision on a motion to dismiss an indictment, we review its legal conclusions anew and its factual findings for clear error.  *United States v. Voigt*, 89 F.3d 1050, 1064 (3d Cir. 1996).  Dunham argues that the indictment should be dismissed because the Government committed outrageous misconduct by exploiting Brownlee's alleged conflict of interest.  Dunham's Br. at 25.

Since 1952, the Supreme Court has recognized "that outrageous misconduct by law enforcement officers in detecting and obtaining incriminating evidence could rise to the level of a due process violation."  *Voigt*, 89 F.3d at 1064 (citing *Rochin v. California*,

_____

[1] The District Court had jurisdiction over this criminal matter under 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291.

342 U.S. 165 (1952)).  As the descriptors indicate, that bar is very high, as the conduct must be "'so outrageous' as to be 'shocking to the universal sense of justice.'"  *United States v. Lakhani*, 480 F.3d 171, 177–78 (3d Cir. 2007) (quoting *United States v. Russell*, 411 U.S. 423, 431–32 (1973)).  Moreover, the defendant, and not the Government, bears "both the burden of production and persuasion."  *Voigt*, 89 F.3d at 1070.  Although our Court continues to recognize the existence of the outrageous misconduct doctrine, it is reserved for "*only the most intolerable government conduct*."  *Id.* at 1065 (emphasis in original) (quoting *United States v. Jannotti*, 673 F.2d 578, 608 (3d Cir. 1982)).  We previously remarked that "courts have rejected its application with almost monotonous regularity," *see id.* (quoting *United States v. Santana*, 6 F.3d 1, 4 (1st Cir. 1993)), and that its "viability . . . is hanging by a thread," *see United States v. Nolan-Cooper*, 155 F.3d 221, 230 (3d Cir. 1998).  Indeed, we have identified only one instance of outrageous misconduct, more than forty years ago in *United States v. Twigg*, 588 F.2d 373 (3d Cir. 1978), where the Government's behavior bordered on entrapment.

Here, Dunham's allegations ask us to consider when the Government's interference with an attorney-client relationship results in a constitutional claim of outrageous misconduct.  In *Voigt*, we set out a three-prong test, requiring the defendant to show "(1) the government's objective awareness of an ongoing, personal attorney-client relationship . . . ; (2) deliberate intrusion into that relationship; and (3) actual and substantial prejudice."  89 F.3d at 1067.[2]

---

[2] Alternatively, Dunham claims we can conclude the Government's conduct was outrageous because it undermined the "fundamental fairness" of the proceedings.

6

Even if we accept Dunham's allegations as true, they do not come close to satisfying the three prongs of *Voigt*. Under the first prong, the Government must have been objectively aware of an actual conflict of interest afflicting Dunham's counsel, Brownlee. *See United States v. Kossak*, 178 F. App'x 183, 186 (3d Cir. 2006). At the outset, we are not convinced an actual conflict existed at all. To establish it, Dunham must demonstrate Brownlee "actively represented conflicting interests" that "adversely affected his [] performance." *Strickland v. Washington*, 466 U.S. 668, 692 (1984) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980)). McAdams was never prosecuted or investigated for misconduct, nor did the Government ever call him as a material witness. Further, testimony at trial suggests that Dunham hid his unlawful activity from McAdams. *See, e.g.*, Suppl. App. 191–95. Even if McAdams or H&K had criminal exposure, Brownlee would have had the incentive to protect, rather than betray, Dunham, because implicating him could have increased suspicion of McAdams. Put another way, McAdams' interests were aligned with rather than divergent from Dunham's own.

As for the second prong, the Government's actions fall well short of being a "deliberate intrusion." Its behavior here is more akin to "passive tolerance" (which is permissible) than "active encouragement of impropriety" (which is cause for concern). *Voigt*, 89 F.3d at 1066. "We are aware of no authority . . . imposing an affirmative duty

_____

Dunham's Br. at 49. We decline to analyze this argument separately, as it seeks an unnecessary and duplicative inquiry. "Fundamental fairness" is simply a shorthand for the Supreme Court's explanation that outrageous misconduct must violate "fundamental fairness, [and be] shocking to the universal sense of justice." *Voigt*, 89 F.3d at 1065 (quoting *Russell*, 411 U.S. at 432).

7

on the Government to inform a suspect that he has a potential conflict of interest with his attorney." *Kossak*, 178 F. App'x at 186. Further, unlike in *Voigt* where only the Government was aware of the conflicting interests (as it was secretly using the defendant's attorney as an informant), Dunham had all the information to assess whether there was an actual conflict. *Voigt*, 89 F.3d at 1062–63.

Finally, Dunham fails to show the Government's misconduct actually and substantially prejudiced him. He essentially argues that he said too much at the proffer sessions, and that if he were represented by conflict-free counsel, he would have kept quiet or not participated at all. But even without the proffer meetings, the Government could have elicited the same testimony from Dunham on cross-examination. The Government's case was further supported by twenty witnesses and ample documentary evidence. Suppl. App. 406, 409–10. In any event, Dunham never explains how Brownlee led him astray. At no point did he allege that Brownlee asked him not to mention McAdams or to provide untrue testimony to protect McAdams and H&K. *See Voigt*, 89 F.3d at 1070 (holding there is no prejudice when the defendant "does not cite even a single occasion on which [his attorney] gave him legal advice that was calculated to damage him to the benefit of the government").

Even accepting Dunham's allegations as true, we conclude that there is no outrageous misconduct justifying dismissal of the indictment. As a result, we also reject his argument that the District Court abused its discretion by not holding an evidentiary hearing. *See United States v. Scripps*, 961 F.3d 626, 631–32 (3d Cir. 2020) (explaining the standard of review). Dunham is entitled to such a hearing only if he raised a

"colorable claim." *Voigt*, 89 F.3d at 1067 (quoting *United States v. Brink*, 39 F.3d 419, 424 (3d Cir. 1994)).[3]  For the reasons explained above, he did not.

\* \* \* \* \*

A defense of outrageous government misconduct is disfavored and burdens the defendant with a typically insurmountable bar.  Dunham falls well short here.  We thus affirm his conviction.

---

[3] We also reject Dunham's assertion that the District Court should have held an evidentiary hearing to explore whether his lawyer's purported conflict of interest prevented Dunham from knowingly and voluntarily waiving his rights under Fed. R. Crim P. 11(f) and Fed. R. Evid. 410 by signing the proffer agreement, which allowed the Government to use his proffered statements against him if he provided conflicting testimony at trial.  This argument is not colorable because, as noted above, Dunham did not adequately allege a conflict of interest. *See United States v. Mezzanatto*, 513 U.S. 196, 210 (1995) ("[A]bsent some affirmative indication that the agreement was entered into unknowingly or involuntarily, an agreement to waive the exclusionary provisions of the plea-statement Rules is valid and enforceable.").